Brett E. Blumstein (SBN 245069)
The Law Offices of Brett E. Blumstein, P.C.
100 West Broadway, Suite 760
Glendale, CA 91210
Phone: 213-687-3100
Fax:  888-622-1731

Attorney for Plaintiff
Yasaman Younesi

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

**YASAMAN YOUNESI**
13412 Cedar Creek Ln
Silver Spring, MD 20904

  *Plaintiff,*

 *vs*.

**MOHAMMAD SADOGHI**
9551 Montanza Way
Buena Park, CA 90620

 and

**MASOOMEH DJODEIR**
9551 Montanza Way
Buena Park, CA 90620

  *Defendants.*

Civil Action No.  8:19-cv-01694

## COMPLAINT

1. Plaintiff Yasaman Younesi, though undersigned attorneys bring this suit against
   Defendants Mohmmad Sadoughi, and  Masoomeh Djodeir ("Defendants") for
   Fraud, Conversion, Breach of Fiduciary Duty, Fraud Misrepresentation, and
   Concealment.

## INTRODUCTION

2. Defendant fraudulently induced Plaintiffs to invest in Defendant's company in order to gain an immigration benefit. However, no appropriate applications have been filed by Defendants to benefit the Plaintiff as agreed, and the investment by Plaintiff has been used to the benefit of Defendants without any commercial activity associated with the business.

3. Mr. Hamid M. Jamali transferred more than $516,000 to Defendant and Defendant 1) failed to use the money as agreed upon prior to its transfer; or 2) return the money to Mr. Jamali.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to the Civil Rights Act of 1964, 42 U.S.C. §2000e-5 et seq., 28 U.S.C. §§ 1331, 1337, 1343, and 1346.

5. Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1402.

## PARTIES

6. Plaintiff, Ms. Yasaman Younesi, is a resident of state of Maryland. She is the daughter of Mr. Hamaid Mohammadi Jamali ("Mr. Jamali"). Mr. Jamali assigned his rights relating to the facts and claims in this complaint to Plaintiff.

7. Defendant, Mr. Mohammad Sadoughi resides in Buena Park, California.

8. Defendant, Ms. Masoomeh Djodeir is the wife of Mohammad Sadoughi, she resides in Buena Park, California.

## STATEMENT OF FACTS

2

9. Mr. Jamali is a citizen of Iran and currently residing in Iran. Plaintiff herein, Ms. Yasaman Younesi, is Mr. Jamali's daughter, and Mr. Jamali has assigned his rights against Defendants to Plaintiff.

10. Defendant, Mr. Sadoughi, is Mr. Jamali's wife's brother and/or his brother-in-law.

11. Mr. Jamali and his family visited United States in 2010. During their trip, Defendant, Mr. Sadoughi, convinced Mr. Jamali that he could move his family to the United States by investing in a U.S. company.

12. Defendants then introduced Mr. Jamali to the Immigrant Investor Program known as "EB-5."

13. Prior to Mr. Jamali investing in a company, Defendants offered to manage Mr. Jamali's investment in the United Stated and also claimed they would apply for the Jamali family's permanent residency in the United States and for Green Cards for the Jamali family.

14. Defendants promised Mr. Jamali that each member of the Jamali family would receive a Green Card within a year, and that the Jamali family would enjoy the profit from Mr. Jamali's investment as well.

15. Defendant, Mr. Sadoughi, then requested that Mr. Jamali invest in his business, Greenland Farms Inc. ("Greenland"), located at 1914 N College Ave., Fayetteville, AR 72703. Defendant, Mr. Sadoughi, claimed that after Mr. Jamali's investment was received that Greenland would then submit immigration applications and supporting documents to United States Citizenship and Immigration Services ("USCIS") for each member of the Jamali family.

**16.** Pursuant to §203(b)(5) of the Immigration and National Act ("INA")[1], INA § 203(b)(5)(A) codifies the "Immigrant Investor Program," which provides classification to qualified immigrants seeking visas to enter the United States for the purpose of engaging in a new commercial enterprise stating:

**(b) Preference allocation for employment-based immigrants.** Aliens subject to the worldwide level specified in section 201(d) for employment-based immigrants in a fiscal year shall be allotted visas as follows:

**(5)** Employment creation.

**(A)** In general. Visas shall be made available, in a number not to exceed 7.1 percent of such worldwide level to qualified immigrants seeking to enter the United States for the purpose of engaging in a new commercial enterprise (including a limited partnership)--

**(i)** in which such alien has invested (after the date of the enactment of the Immigration Act of 1990) or, is actively in the process of investing, capital in an amount not less than the amount specified in subparagraph (C), and

**(ii)** which will benefit the United States economy and create full-time employment for not fewer than 10 United States citizens or aliens lawfully admitted for permanent residence or other immigrants lawfully authorized to be employed in the

---

1. 8 U.S.C. § 1153 (2019).
2. 8 U.S.C. § 1153(b)(5)(A)(i) -(ii) (2019).
3. *See* Exhibit C.

4. *See* Check #1162 for $30,000 to IRS, Check #1163 for $29,750 payable to IRS (Pay Roll), and Check #1161 for $61,000 payable to USCIS.
5. *See* Exhibit D.
6. Cal. Civ. Code §1572 (2019).

United States (other than the immigrant and the immigrant's spouse, sons, or daughters).[2]

17. Defendant, Mr. Sadoughi, convinced Mr. Jamali to invest in his business, Greenland. Mr. Jamali believed in the promises made by Mr. Sadoughi because he never thought his brother-in-law would act against his sister's family.

18. Defendant, Mr. Sadoughi, asked Mr. Jamali to invest at least $500,000 in Greenland.

19. Defendant, Mr. Sadoughi, again told Mr. Jamali that he would take care of the business operations and ensured Mr. Jamali he would make sure to file Mr. Jamali's family's immigration applications before USCIS under the EB-5 Program.

20. At the time of this agreement and Mr. Jamali's investment, Mr. Jamali's daughter and son were under 21 years old. Since Mr. Jamali's children were under 21 at the time, he could include them in one application under the relevant INA statutory provision, which requires a $500,000 investment to qualify for visas.

21. Defendant, Mr. Sadoughi, formed Greenland on October 19, 2010. Defendant sent documents, including Greenland's Articles of Incorporation and Minutes from the "meeting" of the Board of Directors, to Mr. Jamali by email. In addition to the Articles of Incorporation and Minutes, Defendant emailed Mr. Jamali a Share Certificate for 100 shares of Greenland. The documents sent to Mr. Jamali indicated that Greenland issued 1000 shares in total and that along with the 100 shares issued to Mr. Jamali, Defendant issued 100 shares to himself. Furthermore, the Minutes of Board of Directors named Defendant, Mr. Sadoughi, as the

---

2. 8 U.S.C. § 1153(b)(5)(A)(i) -(ii) (2019).

President and Secretary of Greenland and also named Mr. Jamali as Vice President and Treasurer for one year. The Minutes of Board of Directors was signed only by Defendant, Mr. Sadoughi, and was dated October 25, 2010.

22. Despite sending the above-mentioned documents to Mr. Jamali, Defendant, Mr. Sadoughi, did not include Mr. Jamali in Greenland's Articles of Incorporation, which were filed with the State of Arkansas' Secretary of State. Defendant listed himself as the sole incorporator on the Articles of Incorporation filed with the State of Arkansas.

23. After Mr. Jamali received the corporate documents from Defendant, Mr. Sadoughi, he agreed to start transferring investment funds to Greenland's bank account, which had been established by Defendant. Mr. Jamali agreed to send these funds without a comprehensive understanding of the legal implications of each of the documents he had received and acted solely in reliance on Defendant's statements.

24. Defendant, Mr. Sadoughi, gave Mr. Jamali instructions to transfer his investment by wire to Arvest Bank in Arkansas. The bank account was opened on October 25, 2010. The Bank account number for Greenland at Arvest Bank was 0016067257.

25. On October 27, 2010, Defendant, Mr. Sadoughi, wrote a letter from Greenland Farms, Inc. to Mr. Jamali indicating that "*All paperwork required under USCIS (U.S. Citizenship and Immigration Services) and by the IRS (Internal Revenue Service) establishing the payroll system for you is established. Hence, you are the*

*first investor of Greenland Farm Inc. with your US $500,000.00 investment.*"[3] Defendant further stated that there were costs associated with Mr. Jamali's visa applications for his family including: CIS Registration – US $61,000, IRS – US $30,000, Registering Pay Roll – US $29,750, CPA fee – US $8,500, and Application Fee (EB-5) – US $2,475.

26. Defendant, Mr. Sadoughi, sent Mr. Jamali copies of checks for the above expenses. However, these copies had no deposit or endorsement stamps.[4]

27. These stated costs were fabricated numbers by Defendant, since there is no CIS fee of $61,000 for EB-5 applications, there is no $30,000 fee associated with IRS services or filings, there is no $29,750 Pay Roll Registration fee and there is no $2,475 EB-5 application fee.

28. This same letter from Defendant, Mr. Sadoughi, asked Mr. Jamali to transfer his investment to Greenland's bank account. The letter stated: "*After this initial payment, which is listed above, the remaining balance needs to be transferred to the escrow bank account of the company (USA) before the date of the interview at the U.S. Embassy or U.S. Consulate Office.*"

29. Defendant, Mr. Sadoughi, never opened an escrow account associated with Mr. Jamali's investment.

30. In response to Defendant's letter, Mr. Jamali initiated his investment in Greenland Farms, Inc. and transferred the money as requested.

---

3. *See* Exhibit C.

4. *See* Check #1162 for $30,000 to IRS, Check #1163 for $29,750 payable to IRS (Pay Roll), and Check #1161 for $61,000 payable to USCIS.

**31.** Jamali transferred the first investment on November 3, 2010 in the amount of $132,000 US to Greenland's bank account in Arkansas.

**32.** On November 12, 2010, Defendant, Mr. Sadoughi, wrote a confirmation letter to Mr. Jamali confirming the receipt of $132,000.[5]

**33.** Defendant, Mr. Sadoughi, wrote in this conformation letter that: "*As a brief overview of the previous letter to you, Greenland Farms Inc. has received your wire transfer (investment funding US$132,000) according to our partnership agreement. I would like to thank you and welcome you to the company. As an investor/partner of Greenland Farm Inc, EIN 27-3741141, and according to our investment funding agreement, please kindly prepare to wire transfer the second stage of investment funding in the amount of US$200,000 to the bank escrow account of the company before November 22nd, 2010. Below is the banking info.*"

**34.** Mr. Jamali transferred the next investment installment on January 18, 2011 for $40,000 to Greenland's bank account.

**35.** Mr. Jamali transferred another investment installment on January 24, 2011 for $40,000 to Greenland's bank account.

**36.** Mr. Jamali transferred another investment installment on January 31, 2011 for $40,000 to Greenland's bank account.

**37.** Mr. Jamali transferred another investment installment on February 7, 2011 for $40,000 to Greenland's bank account.

**38.** Mr. Jamali transferred another investment installment on February 9, 2011 for $40,000 to Greenland's bank account.

---

5. *See* Exhibit D.

39. Mr. Jamali transferred another investment installment on February 14, 2011 for $40,000 to Greenland's bank account.

40. Mr. Jamali transferred another investment installment on February 24, 2011 for $40,000 to Greenland's bank account.

41. Mr. Jamali transferred another investment installment on March 13, 2011 for $50,000 to Greenland's bank account.

42. Mr. Jamali transferred another investment installment on September 19, 2011 for $50,000 to Greenland's bank account.

43. Overall, Mr. Jamali transferred a total of $512,000 USD to Greenland's bank account.

44. Defendant, Mr. Sadoughi, asked Mr. Jamali to fill out the form I-526, which is necessary to apply for any EB-5 Immigrant Visa. Defendant even sent a copy of a check written to USCIS for the form I-526 fee. The check #1165 in the amount of $2,475 US was written as payable to USCIS on November 1, 2010. However, the filing fee for the EB-5 was only $1,500. There is no documentation that proves the check was ever withdrawn from the account.

45. Defendant, Mr. Sadoughi, lied to Mr. Jamali that his application form had been submitted. Defendant never sent any confirmation from USCIS to Mr. Jamali showing any application had been submitted under Mr. Jamali's name.

46. In 2014, disappointed after multiple attempts to get a visa and gain clarity on the matter, Mr. Jamali realized that no application had ever been filed.

47. Thereafter, Defendant, Mr. Sadoughi, promised to return the money to Mr. Jamali, however Defendant suggested that he had to file something with the

United States government in order to send the money to Iran due to limitations imposed by U.S. Sanctions against financial transactions with Iran.

48. Defendant, Mr. Sadoughi then sent Mr. Jamali a fabricated contract between Greenland and Mr. Jamali's company, Jamali's Export & Import. This "contract" stated that Mr. Jamali, who was listed as the buyer on the agreement, supposedly paid $500,000 to Greenland in order to purchase chicken, however the contract was then cancelled. Consequently, the Defendant, Mr. Sadoughi must return the payment to the buyer, Mr. Jamali.

49. Defendant, Mr. Sadoughi, then sent an application to Mr. Jamali that was supposedly to be filed with the Office of Foreign Asset Control ("OFAC"). This application also claimed the existence of the fabricated contract. Defendant claimed that the application verified he was waiting for a license from the U.S. Government in order to send Mr. Jamali's money to Iran.

50. As of the date of this Complaint, Defendant has not informed Mr. Jamali or his daughter, Ms. Yasaman Younesi, Plaintiff herein, of any actual correspondence with OFAC.

51. In September of 2018, Defendant, Mr. Sadoughi confirmed that he had to pay $512,000 USD to Mr. Jamali. Defendant asked Mr. Jamali for the bank account number to transfer the equivalent amount in Rial (Iranian currency) to Mr. Jamali's account.

52. Defendant, Mr. Sadoughi, did not send any money after his final promise to pay on September 2, 2019.

**53.** As of the date of this Complaint, Defendants have not repaid the money they received through Greenland from Mr. Jamali.

### FIRST CAUSE OF ACTION
**(Fraud)**

**54.** Plaintiff, Ms. Yasaman Younesi, incorporates by reference as though fully set forth herein the allegations written above in this Complaint.

**55.** Defendants actions described above constitute Fraud.

**56.** Actual fraud is defined by §1572 of the California Civil Code which states:

> Actual fraud, within the meaning of this chapter, consists of any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract:
> 1. The suggestion, as a fact, of that which is not true, by one who does not believe it to be true;
> 2. The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true;
> 3. The suppression of that which is true, by one having knowledge or belief of the fact;
> 4. A promise made without any intention of performing it; or;
> 5. Any other act fitted to deceive.[6]

**57.** Using §1572, California case law has outlined what establishes a claim of fraud and the elements necessary to prove such a claim stating that,

> §1572 of the California Civil Code provides that, if the other elements of fraud are present, a promise made without any intention of performing it constitutes actual fraud. *Pinney T. Topliff v. Chrysler Corp.*, a case applying California law, listed the four necessary elements to prove fraud. There must exist (1) a false promise or representation as to a material fact, (2) knowledge of falsity when made, (or lack of reasonable ground to believe in its truth,) or without any intention of performing or fulfilling it, (3) an intent to deceive and to cause

---

6. Cal. Civ. Code §1572 (2019).

reliance at time of the promise, and (4) reliance thereon with resulting injury and damage.[7]

**58.** In this case, the Defendant committed several acts which amount to actual fraud. The Defendant, Mr. Sadoughi, intended to deceive Mr. Jamali when he induced him to enter into the contract to invest in Greenland, while Mr. Jamali was visiting California in 2010. The Defendant knew of the Investment Program which could achieve visas for Mr. Jamali and his family. The Defendant knew Mr. Jamali wanted visas for his family and knew that if he, the Defendant, could convince Mr. Jamali to invest in Greenland he could hold off on repayment of the investment, since Mr. Jamali did not have easy access to the United States.

**59.** The Defendant suggested he could get visas for Mr. Jamali and his family after an investment, even though he did not believe it to be necessarily true.

**60.** The Defendant asserted that Mr. Jamali would receive both a profit from his investment in Greenland as well as visas for his family, when the Defendant knew and suppressed from Mr. Jamali that the process was more complicated than that. The Defendant also suppressed his true intentions for Mr. Jamali's monetary investment.

**61.** The Defendant promised Mr. Jamali that he would get visas and green cards for Mr. Jamali and his family when he had no intention of filing applications for the family to get visas under the Investment Program.[8] Further, the Defendant had no intention to invest the money in Greenland as he advised Mr. Jamali he would.[9]

---

7. *Serpa v. Jolly King Restaurants, Inc.*, 62 F.R.D. 626, 636 (S.D. Cal. 1974) (citing *Pinney T. Topliff v. Chrysler Corp.*, 176 F.Supp. 801 (S.D. Cal. 1959); *See also Urzua v. America's Servicing Co.*, 2009 U.S. Dist. LEXIS 35094 1, 7 (N.D. Cal. 2009).
8. *See Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.*, 55 Cal. 4th 1169 (Cal. 2013).

62. Defendants statements to Mr. Jamali about the government's Investment Program were false and misleading because Defendant had no intention of using the investment funds procured from Mr. Jamali as he promised, and Defendant also had no intention of filing the appropriate paperwork for visas for Mr. Jamali and his family.

63. Mr. Jamali only sent Defendant the investment funds because he trusted that his brother-in-law (Defendant) would invest the money in Greenland as promised and assist Mr. Jamali and his family in applying for the appropriate visas. These statements by Defendant were false since Defendant had no intention of following through as he and Mr. Jamali had discussed. Also, the statements were misleading because they induced Mr. Jamali to send money to Defendant and Greenland for the express purpose of receiving visas for the Jamali family to immigrate to the United States.

## SECOND CAUSE OF ACTION
### (Conversion)

64. Plaintiff, Ms. Yasaman Younesi, incorporates by reference as though fully set forth herein the allegations written above in this Complaint.

65. Defendants actions described above constitute Conversion.

66. Conversion is the wrongful exercise of dominion over the property of another.[10]

---

9. *Id.*

10. *Oakdale Village Group v. Fong*, 43 Cal. App. 4th 539, 543 (1996).

67. The elements of conversion are the plaintiff's ownership or right to possession of the property at the time of conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages.[11]

68. In this case, Mr. Jamali had a right to his monetary investment at the time it was taken by the Defendant for supposed use in Greenland.

69. The Defendant, Mr. Sadoughi, converted Mr. Jamali's monetary investment when he used it for purposes other than Greenland and when he lied to Mr. Jamali about what exactly the money was being used for.

70. Finally, damages occurred due to the Defendant using the money for purposes other than investment since Mr. Jamali and his family were counting on the investment funds to both secure a profit and gain visa entry into the United States.

### THIRD CAUSE OF ACTION
**(Breach of Fiduciary Duty)**

71. Plaintiff, Ms. Yasaman Younesi, incorporates by reference as though fully set forth herein the allegations written above in this Complaint.

72. Defendants actions described above constitute a breach of fiduciary duty.

73. The elements of a claim for breach of fiduciary duty are "(1) the existence of a fiduciary relationship, (2) its breach, and (3) damage proximately caused by that breach."[12]

74. In this case, Mr. Jamali and the defendant had a fiduciary relationship as evidenced by the transfer of funds from Mr. Jamali to the Greenland bank

---

11. *Id* at 543-544; *See also Messerall v. Fulwider,* 199 Cal. App. 3d 1324, 1329 (1988); *Enterprise Leasing Corp. v. Shugart Corp.* 231 Cal. App. 3d 737, 747 (1991).
12. *Mendoza v. Continental Sales Co.,* 140 Cal. App. 4th 1395, 1405 (Cal. Ct. App. 5th Dist. 2006); *See also City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 68 Cal. App. 4th 445, 483 (Cal. Ct. App. 1st Dist. 1998) (citing *Pierce v. Lyman,* 1 Cal. App. 4th 1093, 1101 (Cal. Ct. App. 5th Dist. 1991)).

account. Further, the fiduciary relationship is evidenced by 1) the documents sent from Defendant to Mr. Jamali which list him as the vice president and treasurer of Greenland; and 2) the multiple letters which detail Mr. Jamali's investment.

75. This fiduciary relationship was breached when the Defendant used the funds from Mr. Jamali in a way that was contrary to that which the two men discussed. The Defendant took Mr. Jamali's investment money and did not use it in the Greenland business as he described. Further, the Defendant lied to Mr. Jamali about fees associated with attaining visas through the Government Investment Program and used funds Mr. Jamali sent for this purpose in alternative ways since no visa applications were ever submitted by the Defendant on behalf of Mr. Jamali or the Jamali family members.

76. Finally, Mr. Jamali and his family suffered damages as a result of this breach, since they invested over $500,000 and have never seen a profit or their original investment returned and have also not received visas to immigrate to the United States as they should have been afforded through the Investment Program.

## FOURTH CAUSE OF ACTION
### (Account Stated)

77. Plaintiff, Ms. Yasaman Younesi, incorporates by reference as though fully set forth herein the allegations written above in this Complaint.

78. Defendants actions described above constitute a valid claim for Account Stated.

79. An account stated is well-documented within California and federal case law and described as,

An account stated is an agreement between persons having previous monetary transactions that fixes the amount due in respect to such transactions and promises payment. As such, an account stated is itself an independent contract that is

enforceable without regard to the underlying transactions on which it is based. After a party has tendered an account, the promise to pay the stated amount may be expressed, or implied from the actions of the party when their conduct justifies the inference that they have agreed. Unless a debtor objects within a reasonable time to a tendered account, the inference of an agreement may be drawn and the account considered as stated.[13]

**80.** The elements to state a claim for an account stated are as follows:

(1) previous transactions between the parties establishing the relationship of debtor and creditor;

(2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor;

(3) a promise by the debtor, express or implied, to pay the amount due.[14]

**81.** In this case, Mr. Jamali and the Defendant had an account stated with regard to the full amount paid by Mr. Jamali to Defendant and his business Greenland, a total of $512,000.

**82.** Upon realizing that no applications for visas had been submitted to the appropriate government agencies in accordance with the Investment Program, Mr. Jamali requested his money back and the Defendant agreed that he owed Mr. Jamali the full amount of his investment in Greenland.

**83.** Defendant promised multiple times to repay Mr. Jamali the full $512,000 Mr. Jamali had transferred to the Defendant through the Greenland bank account for the supposed purpose of investing in Greenland and paying fees associated with obtaining visas.

**FIFTH CAUSE OF ACTION**
**(Breach of Contract)**

---

13. *Hashimi v. CACH, LLC*, 2012 U.S. Dist. LEXIS 118988 1, 11-12 (S.D. Cal. 2012) (quoting *Eimco-BSP Service Co. v. Valley Inland Pacific Constructors, Inc.*, 626 F.2d 669, 671-672 (9th Cir. 1980)).
14. *Hashimi v. CACH, LLC*, 2012 U.S. Dist. LEXIS 118988 1, 11 (S.D. Cal. 2012) (citing *Zinn v. Fred R. Bright Co.*, 271 Cal. App. 2d 597, 600 (Cal. Ct. App. 4th Cir. 1969).

84. Plaintiff, Ms. Yasaman Younesi, incorporates by reference as though fully set forth herein the allegations written above in this Complaint.

85. Defendants actions described above constitute a breach of contract.

86. The elements to state a claim for breach of contract are: "(1) the existence of a valid contract, (2) plaintiff's performance, (3) defendants' breach, and (4) resulting damages."[15]

87. In this case, Mr. Jamali and the Defendant had a valid contract in which Mr. Jamali agreed to invest funds in Defendants' business Greenland and Defendant agreed to accept the funds on behalf of Greenland, include Mr. Jamali in the business of Greenland as an investor and member of the board and apply for visas on behalf of Mr. Jamali and his family as part of the government's Investment Program.

88. Mr. Jamali transferred the funds, totaling $512,000 to the Defendant through Greenland's bank account, as Mr. Jamali and the Defendant had agreed upon in the contract and at the times the funds were requested by the Defendant. These transfers amount to Mr. Jamali's performance under the contract.

89. The Defendant received the funds through Greenland's bank account as the two men agreed, however the Defendant did not use the funds as he and Mr. Jamali had agreed. This use of the funds in a way that was contrary to the contract amounts to a breach of the contract by the Defendant.

---

15. *Davis v. Carrington*, 2011 U.S. Dist. LEXIS 164029 1, 5 (C.D. Cal. 2011) (citing *Cecil v. Rocky Mt. Ry. & Mining Museum*, 543 F. Supp. 2d 1145, 1147 (E.D. Cal. 2005)); *See also Shum v. Intel Corp.*, 630 F. Supp. 2d 1063, 1072 (N.D. Cal. 2009) (citing *Wall Street Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171, 1178 (Cal. Ct. App. 2nd Dist. (2008)).

**90.** Due to Defendants breach of the contract, Mr. Jamali and his family experienced damages in that they have lost access to the funds that were invested, they have not received a profit from the investment as was promised by the Defendant, and they have not received visas in accordance with the Investment Program in order for the family to immigrate to the United States.

### SIXTH CAUSE OF ACTION
### (Unjust Enrichment)

**91.** Plaintiff, Ms. Yasaman Younesi, incorporates by reference as though fully set forth herein the allegations written above in this Complaint.

**92.** Defendants actions described above constitute unjust enrichment.

**93.** Under California law, the elements of unjust enrichment are: "(1) receipt of a benefit; and (2) the unjust retention of the benefit at the expense of another."[16]

**94.** In the present case, Defendants were unjustly enriched by Mr. Jamali's "investments" in the Greenland business.

**95.** Defendant, Mr. Sadoughi, received the benefit of Mr. Jamali's investment money as he had full control of the funds once they were in Greenland's bank account and Defendant used the funds as he desired, often contrary to what he had claimed the money was being used for to Mr. Jamali.

**96.** Further, Defendant's receipt of a benefit through Mr. Jamali's investment funds was retained for some time at the expense of Mr. Jamali and his family, since Mr. Jamali and his family were expecting both profits from the investment as well as

---

16. *Shum v. Intel Corp.* 630 F. Supp. 2d 1063, 1073 (N.D. Cal. 2009) (citing *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (Cal. Ct. App. 4th Dist. 2008)); *See also Baggett v. Hewlett-Packard Co.*, 582 F.Supp. 2d 1261, 1270 (C.D. Cal. 2007) (citing *Lectrodryer v. SeoulBank*, 77 Cal App. 4th 723, 726 (Cal. Ct. App. 2nd Dist. 2000); *First Nationwide Savings v. Perry*, 11 Cal. App. 4th 1657, 1662-1663 (Cal. Ct. App. 6th Dist. 1992)).

the issuance of visas in accordance with the Investment Program and these

expected benefits of advancement were never received by Mr. Jamali or his

family. Indeed, Defendant retained the funds and their benefit for years while

lying to Mr. Jamali and his family about how said funds were being used, directly

at the Jamali family's expense.

**97.** Also, Defendant's wife, Ms. Masoomeh Djodeir (named co-defendant herein),

received a benefit from her husband's retention of funds. Since Defendant, Mr.

Sadoughi, had complete control of Mr. Jamali's investment funds after they were

transferred to the Greenland bank account, and since his wife, Defendant, Ms.

Djodeir resided with him and used mutual assets in the couple's everyday life she

retained the benefit of the investment funds at the direct expense of Mr. Jamali

and his family.

### SEVENTH CAUSE OF ACTION
**(Promissory Estoppel)**

**98.** Plaintiff, Ms. Yasaman Younesi, incorporates by reference as though fully set

forth herein the allegations written above in this Complaint.

**99.** Defendants actions described above constitute promissory estoppel.

**100.** To establish a claim for promissory estoppel the Plaintiff must plead:

have
(1) the existence of a promise, (2) that the promisor reasonably should expected to induce the promisee's reliance, (3) that the promise actually induced such reliance, (4) that such reliance is reasonable, and (5) that injustice can be avoided only by enforcement of the promise.[17]

**101.** In the present case, the Defendant made clear and unambiguous promises

to Mr. Jamali and the Jamali family that he would invest the funds provided by

---

17. *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1095 (C.D. Cal 1999) (citing *Aguilar v. International Longshoreman's Union Local #10*, 966 F.2d 443, 444 (9th Cir. 1991)).

Mr. Jamali into the Greenland business and that he would submit applications for visas for the Jamali family to the appropriate government agency under the Investment Program.

102.     In requesting funds from Mr. Jamali for the supposed purpose of investing in Greenland, the Defendant reasonably should have expected to induce Mr. Jamali's reliance since the Defendant knew Mr. Jamali was interested in acquiring visas for his family and was generally aware of his financial situation.

103.     The Defendants promise to Mr. Jamali that if he invested in Greenland, Mr. Jamali and his family would receive visas to immigrate to the United States under the Investment Program did, in fact, actually induce Mr. Jamali to rely on the Defendant's promise when he transferred investment funds to the Greenland bank account.

104.     Based on Defendant's relationship with Mr. Jamali as his brother-in-law and the actual existence of the Investment Program, Mr. Jamali's reliance on Defendants' promise to obtain visas for the family was reasonable.

105.     Indeed, injustice in this case can only be avoided by Defendant using the funds appropriately and submitting the required paperwork for Mr. Jamali and his family to obtain visas, however since this seems unlikely given the circumstances and amount of time that has passed, Defendant must return the invested money to Mr. Jamali and his family.

**EIGHTH CAUSE OF ACTION**
**(Fraudulent Misrepresentation)**

**106.** Plaintiff, Ms. Yasaman Younesi, incorporates by reference as though fully set forth herein the allegations written above in this Complaint.

**107.** Defendants actions described above constitute fraudulent misrepresentation.

**108.** The elements of fraudulent misrepresentation are:

> (1) the defendant misrepresents material facts; (2) with knowledge of the falsity of the representations or the duty of disclosure; (3) with intent to defraud or induce reliance; (4) which induces justifiable reliance by the plaintiff; (5) to his or her detriment.[18]

**109.** In the present case, the Defendant misrepresented the business of Greenland and what exactly Mr. Jamali was investing in, as well as what benefits Mr. Jamali would receive as a result of his investment. The Defendant convinced Mr. Jamali that by investing in Greenland he would receive profits from the business as well as visas under the government's Investment Program. However, the Defendant could not ensure that Mr. Jamali would receive either of these things even if the investment funds were used as the two men discussed prior to Mr. Jamali's transfer of the funds. With Greenland being a new business, Defendant could not be sure there would be a profit conferred by any investor. Further, the issuance of visas, even under the Investment Program, are directly within the purview of relevant U.S. federal government agencies. Defendant could not ensure that Mr. Jamali or his family would receive visas or Green Cards after Mr. Jamali invested funds. Defendant further misrepresented that he would assist in filing the applications for Mr. Jamali and the Jamali family to receive

---

18. *Terra Ins. Co. v. New York Life Inv. Mgmt. LLC*, 717 F. Supp. 2d 883, 890 (N.D. Cal. 2010) (citing *Hahn v. Mirda*, 147 Cal. 4th 740, 748 (Cal. Ct. App. 1st Dist. 2007); *See also Graham v. Bank of America, N.A.*, 226 Cal. App. 4th 594, 605-606 (Cal. Ct. App. 4th Dist. 2014).

visas under the Investment Program when he had no intention of filing such applications.

110.        Defendant knew that his representations to Mr. Jamali were false and had definitive knowledge as to the actual state of the Greenland business as well as the process for receiving a visa. Moreover, Defendant had no intention of using Mr. Jamali's investment funds as the men had discussed as evidenced by Defendant's actual use of the funds and continued lies about fees associated with the IRS and visa applications. Defendant also had no intention of filing for visas as he promised Mr. Jamali.

111.        Defendant intended to defraud Mr. Jamali of the investment funds since he did not use the money to improve upon the Greenland business or to file visa applications. Defendant knew that through the investment of funds Mr. Jamali would be relying on him to submit visa applications and ensure that the money was being used appropriately so as to avoid its loss.

112.        Defendants misrepresentations induced Mr. Jamali to rely on Defendant to accomplish the goal of receiving visas for Mr. Jamali's family under the Investment Program. This inducement is evidenced by Mr. Jamali transferring the funds to Greenland's bank account for their use by Defendant.

113.        Finally, this investment by Mr. Jamali, who detrimentally relied on Defendant's misrepresentations, caused Mr. Jamali to suffer damage in the loss of the investment funds, totaling $512,000. Defendant's misrepresentations also caused Mr. Jamali to suffer damages in the loss of expected profits as well as the loss of time in waiting for visas that were never filed for. Further, Mr. Jamali and

his family have been harmed through the Defendant's actions in not filing the visa applications since they did not receive the visas and could not immigrate through the Investment Program as expected.

## NINTH CAUSE OF ACTION
### (Fraudulent Concealment)

**114.**     Plaintiff, Ms. Yasaman Younesi, incorporates by reference as though fully set forth herein the allegations in written above in this Complaint.

**115.**     Defendants actions described above constitute fraudulent concealment.

**116.**     The elements of fraudulent concealment are:

(1) The defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed    the fact with the intent to defraud the plaintiff, (4) the plaintiff must have    been unaware of the fact and would not have acted as he did if he had known    of the concealed or suppressed fact, and (5) as a result of the concealment    or suppression of the fact, the plaintiff must have sustained damage.[19]

**117.**     In this case, the Defendant concealed material facts about the operation of the Greenland business. Defendant did not inform Mr. Jamali that his name was not included on the Articles of Incorporation that were submitted to the Arkansas Secretary of State. Further, Defendant concealed from Mr. Jamali how his investment funds were actually being used. Additionally, Defendant suppressed the fact that he had not submitted applications for visas for Mr. Jamali or his family under the Investment Program.

---

19. *Gonzalez v. EJ Mortg., Inc.*, 2010 U.S. Dist. LEXIS 48280 1, 5-6 (S.D. Cal. 2010) (citing *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 612 (Cal. Ct. App. 2nd Dist. 1992)); *See also Tietsworth v. Sears, Roebuck and Co.*, 720 F. Supp. 2d 1123, 1132-1133 (N.D. Cal. 2010).

118.      Due to the nature of their business relationship through Greenland and Mr. Jamali's supposed titles as a Board Member of Greenland, Defendant was under a duty to disclose the above-mentioned facts to Mr. Jamali.

119.      Defendant intentionally concealed the above-mentioned facts from Mr. Jamali in order to defraud Mr. Jamali and use the investment funds as Defendant wanted. Defendant also intentionally concealed the above-mentioned facts so that Mr. Jamali would continue to send investment funds to the Greenland bank account.

120.      Mr. Jamali was unaware that he was not listed on the filed Articles of Incorporation for Greenland. Mr. Jamali was unaware that his investment funds were not being used as Defendant stated they were to be used. Mr. Jamali was unaware that Defendant had not submitted visa applications for him or his family to the appropriate federal agency and was unaware that Defendant had no intention of submitting the aforementioned applications. If these facts had not been concealed or suppressed from Mr. Jamali, he would not have sent any investment funds to Greenland.

121.      Finally, Mr. Jamali and his family suffered damages as a result of the Defendant concealing the above-mentioned facts in that they lost the investment funds totaling $512,000, they have received no profit from the Greenland business, and have not received visas under the Investment Program in order to facilitate the family's immigration to the United States.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff Yasaman Younesi requests the following relief:

1. Compensatory damages according to proof;

2. Special damages according to proof;

3. Punitive damages according to proof;

4. Consequential damages according to proof;

5. Cancellation of instrument according to proof;

6. An award of attorney's fees and costs;

7. The costs of suit incurred herein; and for

8. Any further and additional relief as the Court deems just and proper.


Date: SEPTEMBER 5, 2019                     Respectfully submitted,


__/s/ Brett E. Blumstein_____

Brett E. Blumstein (SBN 245069)
**The Law Offices of Brett E. Blumstein, P.C.**
100 West Broadway, Suite 760
Glendale, CA 91210
Phone: 213-687-3100
Fax:  888-622-1731
*Attorney for Plaintiffs*


__/s/ Ali Herischi_____

Ali Herischi, Esq. (MD0024)
**HERISCHI & ASSOCIATES LLC**
7201 Wisconsin Ave., Suite 450
Bethesda, Maryland 20814
Phone: 301-363-4540
Fax: 301-363-4538
*Attorney for Plaintiffs*